# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH BURNS McINTOSH; LOUIS CHARLES McINTOSH,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>THE UNITED STATES; CEDRIC LAMONT TATE,<br><br>　　　　　　　Defendant. | CASE NO. 05CV373 BTM (JMA)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT UNITED STATES' MOTION TO DISMISS AND DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND** |

## I. INTRODUCTION

Defendant United States has filed (1) a motion to dismiss, or in the alternative, for summary judgment as to Plaintiffs' contract claims, and (2) a motion to strike certain allegations in the Second Amended Complaint ("SAC"). Plaintiffs have filed a motion to amend the SAC by adding Mr. McIntosh as a party to Ms. McIntosh's pending tort claims. For the reasons discussed below, Defendant's motion to dismiss is **GRANTED IN PART AND DENIED IN PART**, Defendant's motion for summary judgment is **DENIED AS MOOT**, Defendant's motion to strike is **GRANTED**, and Plaintiffs' motion for leave to amend is **DENIED**.

## II. FACTUAL BACKGROUND

The following facts are taken from Plaintiffs' SAC. The Court makes no finding as

to the truth of these allegations.

On August 4, 2001, Defendant Cedric Tate, a Navy Seaman Recruit stationed in Coronado, attacked Ms. McIntosh on the grounds of Fiddler's Cove Marina. (SAC ¶¶ 3, 4.) Tate assaulted and battered Ms. McIntosh, falsely imprisoned her, and attempted to rape her. (SAC ¶ 13.) Ms. McIntosh resisted Tate's attack and was ultimately assisted by other Marina residents before Tate fled. (Id.) After his escape, Tate attacked two other females in Coronado before he was finally apprehended. (Id.)

At the time of the attack, both Mr. and Ms. McIntosh, father and minor daughter, lived aboard a vessel moored in Fiddler's Cove Marina under a written lease agreement with the Navy. (SAC ¶ 11.) At all times, the Navy owned and operated the Marina. (SAC ¶¶ 3, 11.) Plaintiffs allege that the Navy possessed actual and constructive knowledge that criminal acts were taking place within and around the Marina, yet failed to maintain reasonable security. (SAC ¶ 12.) Plaintiffs further allege that the Navy was required to reasonably maintain the Marina property in a safe manner under the lease agreement. (SAC ¶ 11.)

Plaintiffs generally allege that each defendant was acting within the course, scope, and authority of his employment or agency and that the United States ratified the acts which damaged Plaintiffs. (SAC ¶¶ 5-8.)

### III. PROCEDURAL HISTORY

On February 24, 2005, Plaintiffs commenced this action.

On December 19, 2005, Plaintiffs filed a First Amended Complaint ("FAC") against the U.S. Secretary of the Navy, U.S. Department of the Navy, and Cedric Lamont Tate, alleging causes of action for (1) negligent maintenance and security; (2) negligent infliction of emotional distress ("NIED"); (3) intentional infliction of emotional distress ("IIED"); (4) breach of written contract; (5) breach of implied covenant of good faith and fair dealing; and (6) premises liability.

In an order filed on July 11, 2006, the Court granted in part and denied in part the

1  United States' motion to dismiss the FAC. Among other things, the Court dismissed Mr.
2  McIntosh's claims for negligent maintenance and security, NIED, IIED, and premises
3  liability on the ground that Mr. McIntosh had failed to exhaust his administrative remedies
4  under the FTCA, thereby denying the Court of subject matter jurisdiction over his tort
5  claims.

6  On August 7, 2006, Plaintiffs filed the SAC naming Tate and the United States as
7  defendants. Ms. McIntosh individually asserts the following causes of action: (1)
8  negligent maintenance and security against the United States; (2) NIED against all
9  defendants; (3) IIED against Tate; and (4) premises liability against the United States.
10 Additionally, both Plaintiffs assert claims for breach of written contract and breach of the
11 implied covenant of good faith and fair dealing against the United States.

### IV. DISCUSSION

A. <u>Plaintiff Sarah McIntosh's Contract Claims</u>

The United States argues that it is entitled to a dismissal of Ms. McIntosh's claims for breach of written contract and breach of the implied covenant of good faith and fair dealing because Ms. McIntosh was not a signatory to the lease agreement. The Court agrees.[1]

Generally, contractual rights and obligations of the United States are governed exclusively by federal law. <u>Boyle v. United Techs. Corp.</u>, 487 U.S. 500, 504 (1988). Because the government consents to be sued only by those with whom it has privity of contract, Ms. McIntosh must show she was a party to the lease agreement with the United States. <u>Rodriguez v. United States</u>, 69 Fed. Cl. 487, 491 (2006).

---

[1] The United States moved for dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for a grant of summary judgment pursuant to Fed. R. Civ. P. 56. In ruling upon the United States' motion, the Court will consider the lease agreement submitted by the United States. However, it is still proper to treat the government's motion as a motion to dismiss. <u>See</u> <u>United States v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003) (explaining that a court may consider a document not attached to the complaint on a motion to dismiss if the complaint refers extensively to the document or the document forms the basis for the Plaintiff's claim).

The written lease agreement before the Court was signed exclusively by Mr. McIntosh and omits any mention of Ms. McIntosh. Ms. McIntosh does not contend that she was a signatory to the contract and was actually a minor at the time of the lease's execution. Because Ms. McIntosh was not a party to the lease agreement, the Court dismisses with prejudice her claims for breach of written contract and breach of the implied covenant of good faith and fair dealing. See Roth v. Garcia Marquez, 942 F.2d 617, 628 (9th Cir. 1991) (finding that allowing amendment of Plaintiff's contract claim to plead the existence of an allegedly binding contract with greater specificity would be futile because, among other things, the defendant never signed the document, and nothing could cure that fatal omission).[2]

B.   Plaintiff Louis McIntosh's Contract Claims

The United States contends that Mr. McIntosh's claims for breach of contract and breach of the implied covenant of good faith and fair dealing are actually tort claims masquerading as contract claims. The United States further contends that because Mr. McIntosh has not exhausted his administrative remedies as required by the FTCA, the Court lacks subject matter jurisdiction over these claims. The Court does not find the United States' argument persuasive.

---

[2] Even were Ms. McIntosh proceeding under a theory that she was an intended third party beneficiary of the lease agreement, which she does not contend, her claim would be subject to summary judgment. Under federal law, a party may maintain a claim for breach against the government if the party was an intended third-party beneficiary to an existing contract between the government and another party. Rodriguez, 69 Fed. Cl. at 492. However, parties benefiting from a government contract "are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary." Kremen v. Cohen, 337 F.3d 1024, 1029 (9th Cir. 2003). To be considered a third-party beneficiary, the contract must reflect an express or implied intention of the parties to benefit that third-party. Id. The intended third-party beneficiary need not be specifically identified within the contract, but must fall within a class clearly intended to be benefited by the contract. Id. Furthermore, the intended beneficiary must show that the contract reflects an intention to benefit the third party *directly*. Rodriguez, 69 Fed. Cl. at 493. The contract must establish not just an intent to confer a benefit, but also an intention to grant the third party enforceable rights. Kremen, 337 F.3d at 1029. There is no language in the lease that rebuts the presumption that Ms. McIntosh was merely an incidental beneficiary and nothing in the lease expresses an intention to directly benefit Ms. McIntosh or to grant her enforceable rights.

Viewing the allegations of the SAC in the light most favorable to Mr. McIntosh, Mr. McIntosh alleges that he suffered an injury, separate and apart from the injuries suffered by his daughter, as a result of Defendant's breach of an express or implied term of the lease agreement. See Woodbury v. United States, 313 F.2d 291, 296 (9th Cir. 1963) (explaining that where an action "is essentially for breach of a contractual undertaking, and the liability, if any, depends wholly upon the government's alleged promise, the action must be under the Tucker Act, and cannot be under the [FTCA]."). Mr. McIntosh alleges that he suffered "general" and "contractual" damages as a result of the alleged breach, including relocation costs. Such generalized contractual damage allegations are sufficient to confer the court with subject matter jurisdiction under the Little Tucker Act, 28 U.S.C. § 1346(a)(2).[3] (SAC, ¶ 29, 36.)

Although there is no express term in the lease requiring the United States to reasonably secure the Fiddler's Cove Marina area, Mr. McIntosh has stated a claim that the United States breached the implied covenant of good faith and fair dealing. The obligation of good faith and fair dealing is implied in every contract governed by federal law. Baccardo v. United States, 341 F.Supp. 858, 862 (N.D. Cal. 1972); Asco-Falcon II Shipping Co. v. United States, 32 Fed. Cl. 595, 604 (1994).

In addition, Mr. McIntosh may be able to show that the United States breached an implied term requiring the United States to keep the Fiddler's Cove Marina area safe. For example, under state common law, there are circumstances where the implied warranty of habitability in a lease imposes a duty on the landlord to protect tenants against crime. See Kwaitkowski v. Superior Trading Co., 123 Cal. App. 324, 333 (1981) (holding that landlord had a duty to repair lock on lobby door pursuant to the warranty of habitability

---

[3] In Rodriguez, 69 Fed. Cl. at 494-96, the Plaintiff claimed that the United States breached the implied covenant of good faith and fair dealing by failing to conduct a complete and thorough search of a vehicle that was sold to her at an auction. The vehicle contained a hidden cache of illegal drugs that was discovered when her husband legally drove the vehicle into Mexico. Her husband and the vehicle were seized by Mexican officials. The Court of Federal Claims explained that although the Plaintiff could not recover contract damages for the injuries suffered by her husband, she had made "general allegations of property damages suffic[ient] to supply the court with subject matter jurisdiction over her claims for breach of contract premised upon the Tucker Act . . . ." Id. at 495.

implicit in the lease); But see Penner v. Falk, 153 Cal. App. 3d 858 (1984) (rejecting proposition that every lease has an implied warranty requiring the landlord to prevent foreseeable crime and limiting claim of breach of implied warranty of habitability to cases where the tenant relied on a certain level of security in entering into lease).

Federal courts "have implied warranties against the Government in numerous cases concerning the interpretation and construction of leases and contracts." City of Philadelphia v. Page, 363 F. Supp. 148, 153 (E.D. Pa. 1973). See also Techer v. Roberts-Harris, 83 F.R.D. 124 (D. Conn. 1979) (implying warranty of habitability in HUD leases). Therefore, Mr. McIntosh may have a claim that the United States breached the implied warranty of habitability or some other implied term of the lease.

Neither party has briefed whether the implied warranty of habitability exists in this case and if so, what its scope is. Accordingly, the Court will allow Mr. McIntosh's contract claim to go forward without prejudice to the United States' right to bring a future motion for summary judgment.

C.   Motion for Leave to Amend Mr. McIntosh's Tort Claims

Mr. McIntosh seeks leave to file a third amended complaint, adding himself as a plaintiff to the tort claims. The Court denies this motion.

In its previous order granting the United States' motion to dismiss Mr. McIntosh's tort claims, the Court stated: "[i]f, during the course of these proceedings, Mr. McIntosh can show that he has properly exhausted his administrative remedies under the FTCA, Mr. McIntosh can seek leave to amend the complaint to reallege his tort claims." The purpose of this statement was to allow Mr. McIntosh to show, if at all possible, that he had filed an administrative claim on his own behalf *separate and apart from the July 1, 2002 administrative claim*, which the Court found did not give adequate notice of Mr. McIntosh's intentions to pursue his own claims.

In support of the proposed amendment, Mr. McIntosh simply reasserts his previous argument that the July 1, 2002 claim sufficed to exhaust both his and his daughter's

administrative remedies. The Court has already rejected this contention, and, to the extent Mr. McIntosh is seeking reconsideration of the Court's ruling, the Court denies the motion for reconsideration. Mr. McIntosh's motion for leave to amend is denied.[4]

D.  Motion to Strike Allegations in Second Amended Complaint

The United States moves the Court to strike certain allegations in the SAC because they are contrary to the Court's prior ruling that Mr. McIntosh did not exhaust his administrative remedies by way of the July 1, 2002 claim. The Court grants the United States' motion to strike.

A party may move to strike any immaterial, impertinent, redundant, or scandalous matter before responding to a pleading. Fed. R. Civ. P. 12(f). As previously discussed, in its order of July 11, 2006, the Court found that the July 1, 2002 claim did not give the government adequate notice that Mr. McIntosh intended to pursue his own separate claims. Accordingly, the Court held that Mr. McIntosh had failed to exhaust his administrative remedies as to his tort claims.

In the SAC, filed after the Court's July 11, 2006 order, Plaintiffs reassert that the July 1, 2002 claim provided the United States with adequate notice of Mr. McIntosh's intentions to be considered a separate claimant and allege that Mr. McIntosh has thereby exhausted his administrative remedies. In light of the Court's prior order, these allegations are improper and should be stricken.

///
///
///
///
///

---

[4] Mr. McIntosh may not seek further leave to amend his tort claims in this case unless he presents evidence that he timely and properly exhausted his administrative remedies under the FTCA by means other than the July 1, 2002 claim filed on behalf of Ms. McIntosh.

The Court strikes the following allegations from the SAC:

| Page | Matter to be stricken |
|---|---|
| Page 3, line 20 | "Plaintiffs have" shall be stricken and shall be deemed to read: "Plaintiff Sarah McIntosh has" |
| Page 3, line 22 | "plaintiffs have received an administrative denial of plaintiffs' claim" shall be stricken and shall be deemed to read: "she has received an administrative denial of her claim" |
| Page 3, line 23 through Page 4, line 3 | Strike entire section |
| Page 4, lines 3-4 | "Plaintiffs have consequently timely filed their Complaint For Damages" shall be stricken and shall be deemed to read: "Plaintiff Sarah McIntosh has consequently timely filed her Complaint For Damages" |
| Page 4, line 5 | "Plaintiffs have" shall be stricken and shall be deemed to read: "Plaintiff Sarah McIntosh has" |

## V. CONCLUSION

For the reasons discussed above, Defendant's motion to dismiss **[39]** is **GRANTED** as to Ms. McIntosh's contract claims and is **DENIED** as to Mr. McIntosh's contract claims.  The Court **DISMISSES** with prejudice Ms. McIntosh's claims for breach of written contract and breach of the implied covenant of good faith and fair dealing.  The Court **DENIES** Defendant's motion for summary judgment **[39]** as moot. The Court also **GRANTS** Defendant's motion to strike **[37]** as set forth above.

///
///
///
///

Plaintiffs' motion for leave to file a third amended complaint adding Mr. McIntosh as a plaintiff to the tort claims **[31]** is **DENIED**.

**IT IS SO ORDERED.**

DATED:  January 9, 2007

_____
Hon. Barry Ted Moskowitz
United States District Judge